**SIGNED THIS: May 17, 2016**

_____
**Mary P. Gorman
United States Chief Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re | ) | |
| | ) | Case No. 15-90458 |
| PEARSON BROTHERS | ) | |
| CONSTRUCTION, INC., | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |

# O P I N I O N

Before the Court for approval are the Chapter 7 Trustee's Final Report and Application for Compensation. The Central Illinois Carpenters Health and Welfare Trust Fund, the Carpenters Pension Fund of Illinois, and the Carpenters Retirement Savings Fund of Illinois have filed a joint objection to the Trustee's requested compensation. For the reasons set forth herein, the Final Report and Application for Compensation will be approved over the objection.

## I. Factual and Procedural Background

Pearson Brothers Construction, Inc. ("Debtor") filed its voluntary petition under Chapter 7 on May 4, 2015. The Debtor disclosed on its Schedule B - Personal Property that it held $116,000 in a checking account, had $32,857.63 in accounts receivable, and owned tools, office equipment, and other personal property valued at $14,000. No secured or priority creditors were scheduled. The Carpenters Pension Fund of Illinois was listed as an unsecured creditor in the amount of $196,924.59 and "Central IL Carpenters Health and Welfare" was scheduled as being owed $255,659.68.

Kristin Wilson was appointed Chapter 7 Trustee ("Trustee"). The Trustee promptly retained an auctioneer and sold the Debtor's personal property at auction in June 2015, receiving $9900 in gross proceeds. The Trustee also collected $27,707.63 of the outstanding receivables by mid-June. She took possession of over $87,000 in the Debtor's bank account within four days of the case filing and another $40,000, apparently held in a safe in cash rather than in a bank account, was recovered by her in September 2015. The Trustee collected $12,225.45 for a loan repayment from the Debtor's principals and received more than $5300 by cashing in insurance policies and receiving premium refunds. By January 2016, the Trustee had fully administered all estate assets and had collected a total of $182,247.10.

The Central Illinois Carpenters Health and Welfare Trust ("Welfare Fund") timely filed an unsecured claim in the amount of $255,659.68. The Welfare Fund asserted that $4199.49 of that amount was entitled to priority status. The Carpenters Pension Fund of Illinois and the Carpenters Retirement Savings Fund

of Illinois ("Pension Funds") timely filed a joint claim in the amount of $196,924.59 and asserted that $2847.43 of that amount was entitled to priority status. No objection to either claim was filed by the Trustee or any other party in interest and no other claims have been filed.

The Trustee filed her Final Report and Application for Compensation on March 10, 2016. In the Final Report she disclosed having a balance on hand of $173,909.81 after paying approved auctioneer fees and expenses, approved accountant fees, taxes related to the sale of property and collection of receivables, and her bank service fees. The Trustee requested compensation for herself in the amount of $12,362.36 and reimbursement of $210.12 for her out-of-pocket expenses. She proposed to distribute the remaining funds by payment in full of the Welfare Fund's $4199.49 priority claim, payment in full of the Pension Funds' priority claim of $2847.43, and a pro rata distribution on the general unsecured claims of $87,081.13 to the Welfare Fund and $67,209.28 to the Pension Funds.

The Welfare Fund and the Pension Funds (collectively "Funds") filed an objection to the Trustee's requested compensation. The Funds argue that because the Trustee's time records included with her Application for Compensation show only 13.39 hours of work, a $2678 fee, calculated at a $200 hourly rate, would provide adequate compensation to the Trustee. The Funds assert that her requested amount is unreasonable and disproportionate to the services actually rendered. The Trustee responded citing statutory and case law authority for her compensation to be commission-based and calculated in the manner she proposed. The matter has been fully briefed and, following oral arguments, is now

ready for decision.

## II. Jurisdiction

This Court has jurisdiction over the issues before it pursuant to 28 U.S.C. §1334. All bankruptcy cases and proceedings filed in the Central District of Illinois have been referred to the bankruptcy judges. CDIL-Bankr. LR 4.1; 28 U.S.C. §157(a). Approval of professional compensation and proposed distributions of estate assets are core proceedings. 28 U.S.C. §157(b)(2)(A), (B), (O). The disputes here stem from the bankruptcy itself and therefore may be constitutionally decided by a bankruptcy judge. *See Stern v. Marshall*, 131 S. Ct. 2594, 2619 (2011).

## III. Legal Analysis

Chapter 7 trustees are entitled to be awarded "reasonable compensation for actual, necessary services rendered[.]" 11 U.S.C. §330(a)(1)(A). In determining what is reasonable compensation, a court must treat the compensation as a commission. 11 U.S.C. §330(a)(7). The commission calculation is subject to the maximum caps provided by the statutory formula. 11 U.S.C. §326(a). In this case, the Trustee calculated her requested fee in accordance with the statutory formula and seeks the maximum amount allowable as a commission based on the proposed distributions set forth in her Final Report.

In their objection to the Trustee's requested compensation, the Funds suggest that the appropriate way to determine the Trustee's reasonable compensation would be to use an hourly rate calculation. In support of that argument, the Funds rely on this Court's decision in *In re Luedtke*, 2011 WL

806003 (Bankr. C.D. Ill. Feb. 28, 2011). The Funds suggest that *Luedtke* stands for the proposition that a court can ignore the clear statutory mandate for the commission-based calculation of trustee fees and consider time spent as the sole factor in awarding trustee compensation. The Funds' argument seriously misstates the holding of *Luedtke*.

*Luedtke* involved the unusual situation in which a debtor converted his Chapter 11 case to Chapter 7 after obtaining confirmation of a liquidating plan and after selling a significant amount of his real estate holdings pursuant to that plan. *Id.* at *1. At the time of conversion, approximately $1.3 million was held in the debtor's accounts from the real estate sales. A creditor in the case objected to the trustee receiving a commission on the significant funds that were "handed" to the trustee when he was appointed. *Id.* at *2. After considering the statutes and relevant case law, this Court found that the trustee's compensation was required to be calculated as a commission but, under the special factors presented, an award of the full maximum commission would be disproportionate to the actual services rendered. *Id.* at *4-5. In making that determination, this Court considered many factors including the trustee's time records but made no finding that the time records controlled the calculation. *Id.* Rather, a commission-based calculation was used to establish a reasonable fee. *Id.* at *5. Nothing in *Luedtke* supports the Funds' argument that this Court can or should limit the Trustee compensation here to an amount calculated solely on her time records.

In response to the Funds' objection, the Trustee has cited to the relevant statutory provisions and relies on *In re Wilson*, 796 F.3d 818 (7th Cir. 2015). The

-5-

Trustee correctly relies on *Wilson* for the proposition that her compensation must be calculated as a commission, but she overstates the *Wilson* holding to the extent she suggests that it abrogates or casts doubt on bankruptcy court decisions such as *Luedtke*.

*Wilson* affirmed bankruptcy and district court decisions awarding the maximum statutory compensation to a Chapter 7 trustee over the objection of a creditor who insisted that disbursements to secured creditors should be excluded from the calculation. *Id.* at 821. In doing so, the Seventh Circuit found that the compensation awarded to a trustee must be commission-based but also said that if the statutory calculation "overcompensate[s] the trustee . . . the award to the trustee can be reduced." *Id.* at 820. *Wilson* confirmed that the provisions of Rule 2016 requiring time records to be submitted with all fee applications remain applicable even when compensation is to be awarded on a commission basis. *Id.* at 821; Fed. R. Bankr. P. 2016(a).

In discussing the circumstances when trustee compensation might be reduced below the statutory maximum, *Wilson* relies on *In re Rowe*, 750 F.3d 392, 397-98 (4th Cir. 2014), and suggests that such an action would be appropriate if a trustee sells "assets of the bankrupt estate below fair market value" or commits "other serious error." *Wilson*, 796 F.3d at 820. *Rowe* does hold that serious errors justify a reduction in trustee compensation but also suggests that other factors, such as whether a trustee has delegated duties to an attorney or other professional, should be considered. *Rowe*, 750 F.3d at 397. *Rowe* says that some "extraordinary circumstances" must be present to justify a reduction from the

statutory maximum fee. *Id.* But *Rowe* also says that the parameters for considering whether a fee is reasonable are "broad" and the issue of reasonable compensation should be reviewed and decided on a case-by-case basis. *Id.*

In summary, it is clear that all Chapter 7 trustee compensation must be calculated and awarded on a commission basis. Generally the fee should be calculated using the maximum percentages allowed by statute. *Id.* at 398. But whenever extraordinary circumstances exist, the requested fee may be reduced based on a reasonableness standard. *Id.* at 398-99. Extraordinary circumstances are not limited to trustee errors or wrongdoing. *Id.*

Based on the guidance provided by *Wilson* and *Rowe*, the Trustee's requested compensation in this case is clearly reasonable and no extraordinary circumstances exist that would suggest otherwise. The Trustee's requested compensation of $12,362.36 calculated on distributions of $182,247.10 represents a commission of approximately 6.8%, an amount that is reasonable by any standard. Further, the Trustee handled this case in an extremely efficient manner resulting in significant benefit to the objecting creditors.

The Trustee's time records show that the day after the case was filed, she ordered searches of public records to determine what liens, if any, might encumber the estate assets. Within just six weeks of the case filing, she had retained an auctioneer, noticed a public sale, and sold all of the Debtor's personal property. This Court has previously noted how important it is for trustees to move quickly to sell assets. *See In re Nave,* 2016 WL 1254688 at *7 (Bankr. C.D. Ill. Mar. 30, 2016). It is hard to imagine how the Trustee could have moved any more

expeditiously than she did; most certainly, her prompt action maximized the value of the assets that were sold.

The Funds assert that some of the assets administered by the Trustee were "handed" to her just as assets were handed to the trustee in *Luedtke*. Because the Trustee spent little time—approximately thirty minutes according to her time records—to obtain the $87,000 from the checking account, the Funds suggest that she should not get a full fee on the disbursement of those funds. But the situation here is clearly distinguishable from *Luedtke*. In *Luedtke*, the debtor sold significant amounts of real estate while in Chapter 11 and, although not discussed in the published decision, implicit in the creditor's objection there was the fact that the sale proceeds turned over to the trustee had already been depleted by Chapter 11 attorney fees and United States Trustee quarterly fees. Here, the bank account funds had not been subjected to any prior professional fees or charges and, to the Trustee's credit, she administered the estate without hiring herself or anyone else as an attorney, thus minimizing the administrative expenses chargeable to the estate. The fact that the bank account funds were easily obtainable by the Trustee is not an extraordinary circumstance that would justify a reduction in her fees.

The Trustee also found and administered assets not scheduled by the Debtor. Those assets included both a loan due to the Debtor by its principals and a significant refund obtained by cancelling insurance policies. The Funds benefitted from the Trustee's diligence in finding these additional assets.

All in all, it is hard to understand why the Funds are complaining. In only

eight months, the estate assets were fully administered and ready for distribution. Everything the Debtor disclosed was accounted for and additional assets were found and liquidated. The Trustee did all of the work for her commission alone and without seeking to employ herself as an attorney to increase her total compensation. The work here was of a high quality and justifies a full fee calculated at the statutory maximum rate.

### IV. Conclusion

Chapter 7 trustee fees are to be calculated and paid on a commission basis. Time records remain an important component of all fee applications but a trustee's time alone cannot be the basis for making the fee calculation. Reasonableness remains the standard for all fee awards and extraordinary circumstances may justify the reduction of a Chapter 7 trustee's fee to an amount below the statutory maximum.

The Trustee here has met all requirements for an award of fees and she will be awarded the maximum fee allowable based on the distributions set forth in her Final Report. The Trustee's Final Report and Application for Compensation will be approved over the objection of the Funds.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###